[Cite as *In re Adoption of K.R.S.*, 2020-Ohio-976.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

IN RE:  THE ADOPTION OF:

    **K.R.S.,**

**[M.C. - APPELLANT]**

CASE NO.  5-19-36

O P I N I O N

Appeal from Hancock County Common Pleas Court
Probate Division
Trial Court No. 20185032

**Judgment Affirmed**

**Date of Decision:   March 16, 2020**

APPEARANCES:

    *Brian C. Morrissey* **for Appellant**

    *Jeffrey P. Nunnari* **for Appellee**

Case No. 5-19-36

**SHAW, P. J.**

{¶1} Appellant-respondent, M.C. ("Father") appeals the August 29, 2019 judgment of the Hancock County Court of Common Pleas, Probate Division, finding that appellee-petitioner, T.S. ("Step-Father"), proved by clear and convincing evidence that Father had failed to provide more than *de minimis* contact with his biological child, K.R.S., and that Father had failed to provide maintenance and support to K.R.S. in the year immediately preceding the filing of the adoption petition. As a result, the trial court concluded that Father's consent to Step-Father's Petition for Adoption of K.R.S. is not required, and ordered the case to proceed on the adoption petition. On appeal, Father argues that he had justifiable cause for failing to communicate with K.R.S. and for failing to provide maintenance and support for K.R.S. Therefore, Father contends that the trial court's decision is against the manifest weight of the evidence.

*Facts and Procedural History*

{¶2} K.R.S. was born in Michigan in 2006 to E.S. ("Mother") and Father, who were not married.[1] Mother and Step-Father married in 2017 after being together for several years.

{¶3} On August 15, 2018, Step-Father filed a Petition for Adoption of K.R.S. alleging that Father's consent to the adoption is not required because (1) he had

---

[1] The record indicates that even though Father was not named on the birth certificate, his paternity of K.R.S. was established through a child support proceeding in Michigan.

failed without justifiable cause to provide more than *de minimis* contact with K.R.S. for a year immediately preceding the filing of the adoption petition; and (2) he had failed without justifiable cause to provide for the maintenance and support of K.R.S. as required by law for a period of at least one year immediately preceding the filing of the adoption petition. *See* R.C. 3107.07(A). Step-Father further included as grounds for his petition that Father had been incarcerated from 2011 to 2013 due to his third degree felony conviction for criminal sexual conduct; Father had been incarcerated from December 2015 to October 2016 for parole violations; and that Father is required to register as a sex offender for his lifetime.

{¶4} Notice of a Hearing on the Petition was sent to Father and he filed an objection to the adoption. The trial court set a hearing on the matter.

{¶5} On August 8, 2019, the trial court conducted a hearing on whether Father's consent to the adoption is not required under R.C. 3107.07(A). Step-Father and Mother provided testimony in support of establishing that Father's consent to the adoption is not required. Father and his father, paternal grandfather, both testified in support of the position that Father's consent is required.

{¶6} On August 29, 2019, the trial court issued a judgment entry finding that Father's consent to the adoption is not required. Specifically, the trial court found by clear and convincing evidence that Father had failed to provide more than *de minimis* contact with K.R.S. and had failed to provide maintenance and support for

K.R.S. in the year immediately preceding the filing of the adoption petition. Accordingly, the trial court determined that the adoption could proceed without Father's consent.

{¶7} Father filed a notice of appeal from this judgment entry, asserting the following assignments of error.

### ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT'S DECISION THAT THE APPELLANT FAILED WITHOUT JUSTIFIABLE CAUSE TO PROVIDE FOR THE MAINTENANCE AND SUPPORT OF HIS MINOR CHILD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

### ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT'S DECISION THAT THE APPELLANT FAILED TO PROVIDE MAINTENANCE AND SUPPORT AS REQUIRED BY LAW OR JUDICIAL DECREE IN THE YEAR IMMEDIATELY PRECEDING THE FILING OF THE ADOPTION PETITION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

### ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT'S DECISION THAT APPELLANT FAILED WITHOUT JUSTIFIABLE CAUSE TO PROVIDE DE MINIMUS [SIC] CONTACT WITH HIS CHILD FOR AT LEAST ONE YEAR PRECEDING THE FILING THE ADOPTION PETITION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶8} For ease of discussion, we elect to address the assignments of error together.

*First, Second, and Third Assignments of Error*

{¶9} On appeal, Father argues that the trial court erred in finding his consent to Step-Father's adoption of K.R.S. is not required. Specifically, Father argues that the trial court erred in determining that he had failed without justifiable cause both to provide more than *de minimis* contact with the child and to provide proper maintenance and support during the one-year look-back period of R.C. 3107.07(A).

*Legal Standard*

{¶10} The right of natural parents to the care and custody of their children is one of the most precious and fundamental in law. *In re Adoption of Masa*, 23 Ohio St.3d 163, 164 (1986) citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). An adoption permanently terminates the parental rights of a natural parent. *In re Adoption of Reams*, 52 Ohio App.3d 52, 55 (10th Dist.1989). Therefore, "[b]ecause adoption terminates these rights, Ohio law requires parental consent to an adoption unless a specific statutory exemption exists." *In re Adoption of A.N.B.*, 12th Dist. Preble No. CA2012-04-006, 2012-Ohio-3880, ¶ 5 citing *In re Caudill*, 4th Dist. Jackson No. 05CA4, 2005-Ohio-3927, ¶ 14.

{¶11} One such statutory exemption to the consent requirement is contained in R.C. 3107.07(A), which states.

> **Consent to adoption is not required of any of the following:**
>
> **(A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing,**

> **finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.**

R.C. 3107.07(A). "R.C. 3107.07(A) is written in the disjunctive." *In re Adoption of H.R.*, 3d Dist. Logan No. 8-14-15, 2014-Ohio-5390, ¶ 23. "Therefore, a failure without justifiable cause to provide *either* more than *de minimis* contact with the minor or maintenance and support for the one-year time period is sufficient to obviate the need for a parent's consent." (Emphasis sic.) *Id.*; *see also In re Adoption of A.H.*, 9th Dist. Lorain No. 12CA010312, 2013-Ohio-1600, ¶ 9.

{¶12} The Supreme Court of Ohio has articulated a two-step analysis for probate courts to employ when applying R.C. 3107.07(A). *See In re the Adoption of B.G.F.*, 3d Dist. Shelby No. 17-18-06, 2018-Ohio-5063, ¶ 25 citing *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶ 23.

{¶13} The first step involves the factual question of whether the petitioner has proven, by clear and convincing evidence, the natural parent failed to provide for the maintenance and support of the child or failed to have more than *de minimis* contact with the child. *In re Adoption of M.B.* at ¶ 23. Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is

required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "A trial court has discretion to make these determinations, and, in connection with the first step of the analysis, an appellate court applies an abuse-of-discretion standard when reviewing a probate court decision." *In re Adoption of M.B.* at ¶ 25. The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

{¶14} If a probate court makes a finding that the parent failed to support or contact the children, the court proceeds to the second step of the analysis and determines whether justifiable cause for the failure has been proven by clear and convincing evidence.[2] *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236. The question of whether justifiable cause for the failure to contact the child has been proven in a particular case, "is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the

---

[2] Recently, the Supreme Court of Ohio articulated a three-step analysis for maintenance and support issues under R.C. 3107.07(A). Specifically, the Supreme Court state that "the court must first determine what the law or judicial decree required of the parent during the year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner. Second, the court determines whether during that year the parent complied with his or her obligation under the law or judicial decree. Third, if during that year the parent did not comply with his or her obligation under the law or judicial decree, the court determines whether there was justifiable cause for that failure. *See In re Adoption of B.I.*, 157 Ohio St. 3d 29, 2019-Ohio-2450, ¶ 15. The same burdens of proof and standards of review apply to steps two and three as stated in *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236.

evidence." *Id.* "In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that there must be a reversal of the judgment and an order for a new trial." (Internal quotations omitted.) *In re Adoption of L.C.W.*, 12th Dist. Butler No. CA2014-08-169, 2015-Ohio-61, 2015 WL 135320, ¶ 14. In so doing, we must be mindful that the probate court is in the best position to observe the demeanor of the parties and assess the credibility and accuracy of the testimony.

*Evidence Adduced at the Hearing*

{¶15} In support of his position that Father's consent to the adoption is not required, Step-Father testified that K.R.S. was thirteen-years-old at the time of the hearing and that he has known K.R.S. for ten years. Step-Father explained that he and Mother have been in a relationship for several years, living together in a household with five other children. Step-Father acknowledged that K.R.S. regards him as a father figure and confides in him. Step-Father further stated that Father has had no contact with or provided any financial support for K.R.S. within the year preceding the filing of the adoption petition in August 2018.

{¶16} Mother provided testimony also describing a close relationship between Step-Father and K.R.S. She explained that the adoption petition was filed because K.R.S. asked Step-Father to adopt him. Mother recalled that the last time Father saw K.R.S. was in October of 2015, and the last time that Father had any meaningful contact with K.R.S. was in 2010 prior to Father being incarcerated for the first time. Mother stated that she is sole legal custodian of K.R.S. and that Father's visitation was suspended while he was incarcerated. Mother explained that K.R.S. still has contact with his paternal grandfather and Father's extended family. Mother stated that she would permit Father to see K.R.S. if he asked, but Father has not. Mother further testified that even though Father's visitation with K.R.S. is restricted, he is nevertheless permitted to have other forms of contact like sending birthday cards or gifts, which Father has not attempted to do.

{¶17} Mother stated that she had not received any child support from Father for K.R.S. since January of 2010. She testified the current child support order in place was issued in the State of Michigan, where Father lives and where she and K.R.S. lived prior to 2016. Mother stated that this order obligates Father to pay child support for K.R.S. in the amount of $22.06 per week. In 2011, shortly after he reported to prison, Father successfully petitioned to have his child support payments "reserved" so that his prison wages were not garnished and arrearages did not accrue while he was incarcerated. However, testimony at the hearing indicated

that Father was required to notify the proper authorities within twenty-eight days of his release from prison to have the child support order reinstated, which father failed to do.

**{¶18}** For his part, Father testified that upon his recent release from prison a condition of his parole prohibits him from having contact with minors, even his own child. Father explained his ability to interact with K.R.S. is complicated by the fact that he also is not permitted to have a device with internet capabilities. Father acknowledged that prior to 2015, when he returned to prison for a parole violation, he had special permission from his parole officer to see K.R.S. However, Father claimed that after he returned to prison in 2015, he lost contact with Mother and did not know of K.R.S.'s whereabouts.

**{¶19}** Father admitted that he has not paid child support for K.R.S. since he was released from prison in October of 2018, despite being employed full-time for almost a year. Father claimed he did not know how to reinstate his child support order. Father stated that he met with his parole officer twice a month; that he has had the same parole officer for the past eighteen months; and that his parole officer is aware he has a child. Father acknowledged that he is permitted to see K.R.S. with permission from his parole officer, but that permission is not currently in place.

**{¶20}** Paternal Grandfather also testified on father's behalf. He recalled being in touch with Mother regarding K.R.S. around Christmas of 2015. However,

the two had a falling out when Mother discovered that Paternal Grandfather left K.R.S. alone with Father when Mother had allowed Paternal Grandfather to take K.R.S. for a visitation. Paternal Grandfather claimed he lost contact with Mother and K.R.S. after that point, and only discovered that they were living in Ohio when he learned about the adoption petition. Paternal Grandfather noted that Mother recently permitted K.R.S. to spend a weekend with him and his extended family. The visitation time was arranged between Mother and Father's sister.

*Discussion*

*1. Failure to Provide Contact*

{¶21} In its August 29, 2019 Judgment Entry, the trial court found that there is no justifiable cause for Father's failure to communicate with K.R.S., specifically the trial court found:

> **[Father] acknowledges that he has not visited or contacted [K.R.S.] within the last year. However, [Father] argues that there is justifiable cause due to his order that he not have contact with any children including his own. This requirement is a condition of his probation. [Father] acknowledged that he was able to earn his way to have contact with [K.R.S.] at one time. After [Father's] initial release from prison, he was compliant with probation and received permission from his probation officer to have visits with [K.R.S.]. Those visits occurred until [Father] violated his probation and was placed back in prison. Since his last release from prison, he has not yet re-earned privileges to have visits and therefore visits have not occurred. Therefore, it is not simply the order of no contact that has precluded [Father] from the ability to visit his son, it is [Father's] own behavior that caused the privilege to be taken away by his probation officer and the Court cannot find that failure justifiable. Accordingly, the Court hereby**

-11-

> **finds by clear and convincing evidence that [Father] has failed without justifiable cause to provide more than de minimus [sic] contact with the child for a period of at least a year immediately preceding the filing of the adoption petition.**

(Doc. No. 25 at 3-4.)

{¶22} It is undisputed that Father has failed to maintain contact with K.R.S. since 2015. Nevertheless, Father argues that the conditions of his parole, which required him to have no contact with minors, and the suspension of his visitation with K.R.S. is justifiable cause for his failure to communicate with K.S for at least one year immediately preceding the filing of the adoption petition. Father further argues that Mother's move to Ohio constituted significant interference which also justifies his lack of contact with K.R.S.

{¶23} At the outset, we note that the record supports the trial court's observation that "it is not simply the order of no contact that has precluded [Father] from the ability to visit his son." (Doc. No. 25 at 3). Rather, the record clearly indicates that there were means that Father could have pursued to have contact with K.R.S. The record demonstrates that Father was in fact granted permission by his parole officer in 2015 to have contact with K.R.S. This notwithstanding, there is nothing in the record to indicate Father again attempted to get permission from his parole officer to see K.R.S. during the time he was released from prison for parole violations in October 2016 or in October 2018, after he served a three-month prison term. The record further indicates that Father never sought visitation through the

-12-

Michigan Court by attempting to modify the agreement to provide for parenting time.

**{¶24}** Moreover, the record suggests that Mother was candid about her move to Ohio with K.R.S. and she maintained a point of contact with the court in Michigan using Maternal Grandmother's address. Despite Father's contentions, the record fails to establish that Mother attempted to hide K.R.S. from him. To the contrary, Paternal Grandfather was able to make contact with Mother in Ohio and even arranged for weekend visitations with K.R.S. Yet, Father did not attempt to contact K.R.S. through his family members. Based on the foregoing, we find that the trial court's determination that Father has failed without justifiable cause to provide more than *de minimis* contact with K.R.S. during the relevant one year time frame is supported by the manifest weight of the evidence.

*2. Failure to Provide Maintenance and Support*

**{¶25}** In its August 29, 2019 Judgement Entry, the trial court found that there is no justifiable cause for Father's failure to provide maintenance and support for K.R.S. Specifically, the trial court found:

> **[Father] is not listed on the birth certificate provided to the Court as [K.R.S.'s] father. However the Court was provided documentation that [Mother] and [Father] were involved in a paternity action regarding [K.R.S.] in the Jackson County Court in Michigan. (See Exhibits 8, 9, and 10). These documents illustrate that [Father] has established paternity of this child, was ordered to pay support at one time and that support was "reserved" when [Father] was incarcerated. (See Exhibit 10).**

-13-

> **The court order goes on to state "[c]hild support shall be reinstated 28 days after the payer of support is released from incarceration. The payer must immediately report his release from incarceration to the Friend of Court." [Father] admits that he never contacted the Court to have child support reinstated after his release from prison on either occasion. He argues since no support was ordered he did not fail to support [K.R.S.] and therefore [Father's] consent is necessary for this adoption. The Court is not convinced. Failing to contact the Court to have the support order reinstated is failing to support the child. [Father] also admits that he did not send any money to the child for support since 2012 when his prison wages were garnished for child support. [Father] also admits that he is currently employed full-time and has been for over a year. The Court hereby finds by clear and convincing evidence that [Father] has failed without justifiable cause to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding the filing of the adoption petition or the placement of the minor in the home of [Step-Father].**

(Doc. No. 25 at 3.)

{¶26} On appeal, Father likens this case to those cases which have held that a parent's nonsupport of his or her minor child pursuant to a zero-support order of a court of competent jurisdiction provides "justifiable cause" for the parent's failure to provide maintenance and support and therefore does not extinguish the requirement of that parent's consent to the adoption of the child. *See In re Adoption of B.I.*, 157 Ohio St. 3d 29, 2019-Ohio-2450.

{¶27} However, this is not a case where a court has reduced a parent's child support to zero, thereby relieving the parent of the duty to provide support under a judicial decree. *See In re Adoption of B.I.*, 157 Ohio St. 3d 29, 2019-Ohio-2450, ¶

-14-

17. Rather, the uncontroverted evidence before the trial court indicates that *there is in place* a valid child support order obligating Father to pay $22.06 per week for K.R.S.'s support and that this order was "reserved" or "paused" at Father's request while he was incarcerated in 2012. It is undisputed by the parties that Father was required to notify the proper authorities in Michigan to reinstate his child support obligation within twenty-eight days of his release from prison. Father acknowledges that he failed to do so. We concur with the trial court's conclusion in this instance that "[f]ailing to contact the Court to have the support order reinstated is failing to support the child." (Doc. No. 25 at 3). Accordingly, we conclude the trial court's determination that Father failed without justifiable cause to provide for the support for K.R.S. as required by law or judicial decree within the relevant statutory time frame is supported by the weight of the evidence.

{¶28} For all these reasons, the assignments of error are overruled and the judgment of the trial court is affirmed.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**