[Cite as *In re Adoption of C.J.*, 2022-Ohio-1133.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

IN RE:  THE ADOPTION OF:

    C.L.Y.,

[MARCUS S. - APPELLANT]

CASE NO.  5-21-23

**O P I N I O N**

Appeal from Hancock County Common Pleas Court
Probate Division
Trial Court No. 20205041

**Judgment Affirmed**

**Date of Decision:  April 4, 2022**

APPEARANCES:

    *Linda Gabriele* **for Appellant**

    *Kalina D. Hillard* **for Appellee**

**SHAW, J.**

{¶1} Appellant-Father, M.S. ("Father"), appeals the July 19, 2021 judgment entry of the Hancock County Common Pleas Court, Probate Division, finding his consent was not required for a petition for adoption of his minor child, C.L.Y. Appellee-Petitioner is Maternal Aunt, D.Y. ("Maternal Aunt").

*Facts and Procedural History*

{¶2} C.L.Y. was born to Father and Mother, C.Y. ("Mother"), in 2008. Father has been incarcerated since April of 2013. Pursuant to both an Erie County Juvenile Court's order and the Mother, C.L.Y. was placed in Maternal Aunt's legal custody on December 9, 2014.

{¶3} Almost six years later, on October 8, 2020, Maternal Aunt filed a petition for adoption in the Probate Division of the Hancock County Common Pleas Court. The petition alleged C.L.Y.'s parents' consent was not necessary because (1) they had failed without justifiable cause to provide more than de minimis contact with the child for a year immediately preceding the filing of the adoption petition; and (2) they had failed without justifiable cause to provide for the child's maintenance and support as required by law for a period of at least one year immediately preceding the filing of the petition. *See* R.C. 3107.07(A). Father objected to the adoption. Thus, a hearing on the issue of the necessity of consent was conducted on July 19, 2021.

Case No. 5-21-23

{¶4} After the hearing, the trial court issued its judgment entry finding the parents, without justifiable cause, failed to have more than de minimis contact with C.L.Y. for a period of one year immediately preceding the filing of the petition. The trial court further found there was no justifiable cause for the parents' failure to provide for the maintenance and support of C.L.Y. during the one-year period preceding the filing of the petition. Therefore, the trial court concluded consent for the adoption was not required from either parent pursuant to R.C. 3107.07.

{¶5} Father appeals the trial court's judgment, raising one assignment of error for review.[1]

### ASSIGNMENT OF ERROR

**THE JUVENILE COURT ERRED IN FINDING NO PARENTAL CONSENT NECESSARY TO ADOPT AS THE DECISION WAS AN ABUSE OF DISCRETION AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶6} In his assignment of error, Father argues that the trial court erred in finding that his consent to the adoption is not required. Specifically, Father argues that his lack of contact with C.L.Y. was not willful. Father also argues that he had justifiable cause both for failing to contact C.L.Y. and for failing to provide maintenance and support for C.L.Y. Therefore, Father contends that the trial court's decision is against the manifest weight of the evidence.

---

[1] Mother has not appealed the trial court's judgment.

-3-

*Law*

**{¶7}** R.C. 3107.07(A) provides that consent to an adoption is not required from a parent of a minor child

> **when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.**

**{¶8}** R.C. 3107.07(A) involves "a two-step analysis." *See In re Adoption of K.R.S.*, 3d Dist. Hancock No. 5-19-36, 2020-Ohio-976, ¶ 12, citing *see In re the Adoption of B.G.F.*, 3d Dist. Shelby No. 17-18-06, 2018-Ohio-5063, ¶ 25, citing *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶ 23.

**{¶9}** The first step involves the factual question of whether the petitioner has proven, by clear and convincing evidence, that the parent failed to have more than de minimis contact with the child or failed to provide for the maintenance and support of the child for the one-year time period. *Id.* at ¶ 13, citing *In re Adoption of M.B.* at ¶ 23; R.C. 3107.07(A). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Id.* citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. A trial court has discretion to make these determinations, and an appellate court applies an abuse-of-discretion

standard when reviewing a trial court's decision. *Id.* An abuse of discretion is more than an error of law or judgment, but instead implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Id.* citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

{¶10} If a trial court makes a finding that the parent failed to support or contact the child, the court then proceeds to the second step of the analysis and determines whether justifiable cause for the failure has been proven by clear and convincing evidence. *Id.* at ¶ 14, citing *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236. The trial court's determination regarding justifiable cause will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* In determining whether a judgment is against the manifest weight of the evidence, we must review the record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.* citing *In re Adoption of L.C.W.*, 12th Dist. Butler No. CA2014-08-169, 2015-Ohio-61, ¶ 14. "In doing so, we must be mindful that the [trial] court is in the best position to observe the demeanor of the parties and assess the credibility and accuracy of the testimony." *Id.*

*Analysis*

1.    *Failure to Provide Contact*

{¶11} There is no dispute in this case that Father had no contact with C.L.Y. in the year preceding the filing of the petition for adoption. The record shows the adoption petition was filed on October 8, 2020, and Father admitted he did not have any contact with C.L.Y. during the relevant one-year period. Accordingly, we lack any basis to find that the trial court acted unreasonably, unconscionably, or arbitrarily in determining that Father did not have more than de minimis contact with the child. Thus, the issue before us is whether the trial court properly concluded that there was no justifiable cause for Father's failure to have contact with his child.

{¶12} Father argues that Maternal Aunt's technical issue with JPay[2] prevented contact from occurring so as to constitute justifiable cause for his failure to communicate with C.L.Y. Father further argues he did not have direct contact information for Maternal Aunt which also justifies his lack of contact with C.L.Y. Importantly, the Ohio Supreme Court has "refused to adopt a 'precise and inflexible meaning' for 'justifiable cause,' but instead has stated that 'the better-reasoned approach would be to leave to the probate court as finder of fact the question of whether or not justifiable cause exists.' " *In re Adoption of J.M.M.*, 3d Dist. Henry

---

[2] JPay is a form of communication that Father used to email or send videograms from prison. (Tr. at 11).

Nos. 7-20-06 and 7-20-07, 2021-Ohio-775, ¶ 26, quoting *In re Adoption of Holcomb* at 367, citing *In re Adoption of McDermitt*, 63 Ohio St.2d 301 (1980). The Supreme Court reasoned that " '[t]he probate court is in the best position to observe the demeanor of the parties, *to assess their credibility, and to determine the accuracy of their testimony.*' " (Emphasis sic.) *Id.* "The Supreme Court has further held that an important consideration regarding justifiable cause is the parent's willingness and ability to support or contact a child." *In re Adoption of R.A.H.*, 2d Dist. Champaign No. 2020-CA-32, 2021-Ohio-1667, ¶ 14, citing *In re Adoption of Masa*, 23 Ohio St.3d 163, 166 (1986).

{¶13} At the hearing, Father testified that it was in June 2016 that Maternal Aunt first contacted him through JPay and he had communication with C.L.Y. by videogram. Father testified, "I asked for [Maternal Aunt's] phone number even back then, but I never did receive one for whatever reason[.] * * * I try my hardest to at least hold some type of communication through either phone or JPay," but because "I didn't really know [Maternal Aunt] that well," "I didn't really want to, like, force my way into, like, having her answer her phone and do all of this stuff." (Tr. at 27). He also testified that when he did send videograms, Maternal Aunt "never really would respond all that much." *Id.* According to Father, he had attempted continued contact with Maternal Aunt, but it was a couple of years that she did not respond and they lost contact. Father also testified that the next time

Maternal Aunt contacted him was when she reached out to tell him about the petition to adopt C.L.Y.

{¶14} On cross-examination, Father further testified that, in the last five years, he "talked to [Maternal Aunt] maybe twice in 2016, and I asked for her number back then, I never received it." (Tr. at 32). It was then provided to him in November of 2020.

{¶15} Maternal Aunt testified that during the one-year period in question (October 8, 2019 – October 8, 2020), Father did not see C.L.Y. for any period of time, did not contact her to see C.L.Y., and did not call or attempt to call her to speak to C.L.Y. on the phone. Maternal Aunt also testified that Father did not contact her to try to see C.L.Y. through video communication or send any cards or emails to C.L.Y. According to Maternal Aunt, Father did have a way to contact her through JPay to try to make contact with C.L.Y. during that time frame.

{¶16} Maternal Aunt testified Father had previously communicated with her via JPay, but to her knowledge, he did not ever inquire about having conversation with C.L.Y. in those communications. In addition, Maternal Aunt testified that, to the best of her knowledge, the last time Father had contact with C.L.Y. was when he was three or four years old.

{¶17} Maternal Aunt testified that she has had the same cell phone number since 2013, and although she believed that she had given it to Father previously, she

also testified that Father had not to her knowledge ever previously asked for her phone number. (Tr. at 14, 22). But, if he had asked her for it, there was no reason she would not have given it to him previously. (Tr. at 22).

{¶18} On redirect examination, Maternal Aunt further testified that she did not recall Father asking for her phone number in 2016, and she again testified there was no reason why she would not have provided her phone number to Father had he asked for it. Maternal Aunt also during redirect examination admitted she got "locked out" of JPay when she bought a new phone and would not have been able to respond in JPay. However, she did not remember exactly the time frame of when she was locked out, but when asked about when she was able to start having communication with Father again, she stated it was "maybe a year" before she filed her petition for adoption, and that she "had reached out to him to let him know that [C.L.Y.] was doing okay, once I was able to get back in * * * to let him know that he was doing okay." (Tr. at 36). She also explained to him about being locked out of JPay. In particular, she testified that when they did message in the past, "I initiated a lot of conversations, but so did he." "He would just message and then I would message to let him know * * * how [C.L.Y.] was doing in sports and school and stuff." (Tr. at 37). She again said Father never asked to talk to C.L.Y. during those messages, not that she could remember. *Id.*

{¶19} During recross-examination, Maternal Aunt admitted that there was a period prior to October of 2019, the start of the look-back period, when she was locked out of JPay and that it was possible Father could have asked for a phone number during that time. However, on redirect examination, Maternal Aunt testified that the next time she remembered him asking for her phone number, after she got access back to JPay, "was when I had reached out to him after the Petition for the Adoption. He asked for it, he said he needed to hear that [C.L.Y.] * * * wants to be adopted and he wants to live there, and I allowed that to happen. I gave him my number[.]" (Tr. at 39).

{¶20} Here, the trial court had the benefit of observing each witness. It is clear in our review of the record that the trial court determined the issue of justifiable cause based on the credibility of the witnesses. Unquestionably, the conflicting evidence concerning Father's attempt to contact his child through his JPay with Maternal Aunt is ultimately a credibility determination. Moreover, in addition to the conflicting evidence concerning Father's attempt to obtain Maternal Aunt's cell phone number through JPay, the record indicates that Father has not had, or has not attempted to have, any contact with C.L.Y. by letters, Christmas or birthday cards, or in any other way, despite being incarcerated. It is also apparent that Father took no legal action to obtain contact with C.L.Y. and he presents no explanation or justification for this failure, either. In fact, the evidence shows some willingness on

Maternal Aunt's part to allow communication to take place during the relevant time period.

**{¶21}** The trial court was in the best position to weigh the parties' testimony, and thus, we defer to the trial court in making credibility determinations and in evaluating how much weight to give Father's testimony. We believe that the foregoing evidence constitutes clear and convincing evidence to support the trial court's finding that Father's failure to contact C.L.Y. was not justifiable. Consequently, based on our review of the record, we conclude that the trial court's determination that Father had failed without justifiable cause to have more than de minimis contact with C.L.Y. is not against the manifest weight of the evidence.

*2. Failure to Provide Maintenance and Support*

**{¶22}** On appeal, Father also challenges the trial court's determination that he failed without justifiable cause to provide for the maintenance and support of C.L.Y. during the one-year look-back period. As set forth previously, R.C. 3107.07(A) states that a parent's failure to provide for the maintenance and support of the child is an alternative reason for finding that the parent's consent is not necessary for an adoption. *Accord In re Adoption of K.R.S.*, 3d Dist. Hancock No. 5-19-36, 2020-Ohio-976, at ¶ 11, quoting *In re Adoption of H.R.*, 3d Dist. Logan No. 8-14-15, 2014-Ohio-5390, ¶ 23 (" 'R.C. 3107.07(A) is written in the disjunctive.' "). Consequently, a failure without justifiable cause to *either* have

more than de minimis contact or provide *maintenance and support* for the one-year time period is sufficient to obviate the need for a parent's consent. (Emphasis added.) *Id.*

{¶23} "The Supreme Court of Ohio defined 'the maintenance and support required by R.C. 3107.07(A) [as] that which is specifically "required by law or judicial decree." ' " *In re Adoption of C.N.A.*, 3d Dist. Shelby No. 17-17-20, 2018-Ohio-897, ¶ 26, quoting *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, at ¶ 20. In *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, the Supreme Court recently reviewed the various statutory provisions governing a natural parent's duty to support his child. In doing so, the *B.I.* Court references R.C. 3103.03(A) which states "[t]he biological or adoptive parent of a minor child must support the parent's minor children out of the parent's property or by the parent's labor." *In re Adoption of B.I.* at ¶ 19. The Court further explained that:

> **R.C. 3103.03 sets forth a parent's obligation to support his or her children in the absence of a child-support order. "Under R.C. 3103.03, all parents, whether married or not, have a duty to support their minor children; it follows logically from this that all children have a right to be supported by their parents, regardless of the parents' marital status."** *In re Dissolution of Marriage of Lazor*, **59 Ohio St.3d 201, 202, 572 N.E.2d 66 (1991). But this general statutory declaration does not end our inquiry; it is merely the beginning.**
> * * *
> **Ohio's statutory scheme regarding families and children makes clear that there are two statuses of parental obligation: first, a general obligation of parents to support their children imposed by law in R.C. 3103.03, and second, a specific child-support**

> **obligation imposed by judicial decree pursuant to R.C. 3109.05 and Chapter 3119 that supersedes the general obligation once the court issues its decree. When R.C. 3107.07(A) uses "or" in the phrase "by law or judicial decree," it recognizes that a parent's obligation of support can have one of two possible statuses– general or specific. But a parent can have only one obligation status at a time. \* \* \* A parent is subject either to the general obligation or to a specific obligation and is evaluated accordingly.**

*Id.* at ¶ 21, 27.

**{¶24}** Here, the testimony from Maternal Aunt revealed that, during the relevant one-year period, Father never provided any funds for the support of C.L.Y., never provided any "in-kind contribution," and never paid "any child support to [her] through the Child Support Enforcement Agency." (Tr. at 12-13). Additionally, while Father testified he would have provided for C.L.Y., he also testified about only providing shoes for C.L.Y. twice in 2021 along with $150.00, and it is undisputed that he never provided any other support for C.L.Y. prior to the filing of the adoption petition. (Tr. at 29-30).

**{¶25}** Based on our review of the record, we find the trial court's determination that Father failed without justifiable cause to provide for the maintenance and support of C.L.Y. for at least one year immediately preceding the filing of the adoption petition is supported by clear and convincing evidence, and is therefore not against the manifest weight of the evidence.

**{¶26}** Accordingly, in these two arguments, Father has not established trial court error. Thus, his sole assignment of error is overruled.

-13-

{¶27} Based on the foregoing, the judgment of the Hancock County Common Pleas Court, Probate Division, is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**