[Cite as *In re J.C.B.*, 2022-Ohio-3098.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


IN RE: : CASE NO. CA2022-02-019

J.C.B. : O P I N I O N
9/6/2022

:

:

:

:


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2020-0316


Garrett Law Offices, and Dawn S. Garrett, for appellant.

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Legal Aid society of Southwest Ohio, LLC, and Nancy Braun, Guardian Ad Litem.


**M. POWELL, P.J.**

{¶ 1} Appellant ("Mother") appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting legal custody of her daughter, Jolie, to the child's paternal aunt and uncle (collectively "Paternal Aunt").[1]

---

1. For privacy and readability, we refer to the child using a fictitious name.

{¶ 2}   Jolie was born on October 28, 2020.  On November 3, 2020, the Butler County Department of Job and Family Services (the "Agency") filed a complaint alleging that Jolie was a neglected and dependent child.  The complaint alleged that: Jolie tested positive for Subutex and marijuana at birth; Mother admitted having a prescription for Subutex since August 2020 and that prior to that date, she had been using heroin, methamphetamine, and Xanax; and on November 2, 2020, the Butler County Sheriff's Office was forced to remove Jolie from Mother's custody because Mother and the child's alleged biological father refused methadone treatment for Jolie which was prescribed as medically necessary to prevent Jolie from experiencing life-threatening seizures.  The complaint sought a disposition of temporary custody to the Agency or to the child's Maternal Great-grandmother, or temporary or legal custody to another party deemed appropriate by the juvenile court.  Upon the filing of the complaint, the juvenile court awarded emergency custody of Jolie to Maternal Great-grandmother.  Following a shelter care hearing on November 9, 2020, Jolie was placed in the temporary custody of Paternal Aunt.

{¶ 3}   On December 12, 2020, Jolie was adjudicated dependent; temporary custody of Jolie remained with Paternal Aunt.  Following a review hearing held on September 27, 2021, a magistrate issued an order notifying Mother that the Agency had requested a final determination regarding its request for legal custody, that a virtual review hearing was set for December 7, 2021, and that an in-person custody hearing was set for January 4, 2022. The magistrate's order advised Mother of her "duty to be present in court for every scheduled court proceedings" and that "[i]n the event that a parent fails to comply with any or all of those duties, this court may, if deemed to be in this child's best interest, place this child in the legal custody of the child's temporary custodian or with any other appropriate person thereby closing this case with no further notice to that parent."  The order further provided,

THE PARTIES JOINED IN THIS CASE ARE ORDERED TO APPEAR BEFORE THE COURT AT THE TIME AND DATE AS SET FORTH IN THIS ORDER.  IF YOU FAIL TO APPEAR FOR ANY HEARING SCHEDULED IN THIS ORDER:

**JUDGMENT MAY BE RENDERED IN YOUR ABSENCE;**
**FINAL OR TEMPORARY DISPOSITIONAL ORDERS MAY BE ISSUED IN THIS CASE WITHOUT FURTHER NOTICE TO YOU; AND/OR**
**THE COURT MAY ISSUE A WARRANT FOR YOUR ARREST.**

{¶ 4}  Subsequently, Mother moved the juvenile court to grant legal custody of Jolie to the child's Paternal Grandmother.  As was the case for the September 2021 hearing, the December 7, 2021 hearing was conducted virtually via WebEx.  Mother's counsel was present; Mother, however, did not appear.  The magistrate started the hearing by indicating it was held for purposes of review, noted Mother's absence, and referenced a recent off-the-record discussion between the magistrate and Mother's counsel regarding counsel's contact information for Mother.  Counsel indicated on the record that he did not have a better way to contact Mother.  The magistrate next acknowledged he had received three exhibits from the state: a December 6, 2021 social summary, Paternal Aunt's statement of understanding, and Paternal Aunt's November 2020 home study.

{¶ 5}  The guardian ad litem indicated she had no objection to the social summary, was "in agreement with legal custody," and suggested moving forward with granting legal custody.  The prosecutor, referring to the notice above in the magistrate's September 27, 2021 order, Mother's motion for legal custody, and Mother's failure to appear at the hearing, requested that the juvenile court proceed to grant legal custody of Jolie to Paternal Aunt. Mother's counsel did not object to proceeding as described above and volunteered to the juvenile court that he had forwarded Mother the September 27, 2021 order containing the

notice that orders may be entered if she failed to appear.[2] The magistrate confirmed that Paternal Aunt had signed the required statement of understanding to be awarded legal custody of Jolie. The magistrate then proceeded to grant legal custody of Jolie to Paternal Aunt as follows:

> [N]ot hearing anything, I think that the Court has the authority to go ahead and do what the prosecutor is asking me to do based upon the language of the order and that's in bold as she pointed out, is that you failed to appear for any hearing scheduled in this order, a judgment may be rendered in your absence[,] final or temporary dispositional orders may be issued in this case with no further notice to you. I don't know how more clear that can be. [M]other has failed to appear. She's, so she's got a motion but she's apparently not here to say hey, I want to prosecute that motion. [T]he Agency at the previous hearing has indicated they want to go forward and grant custody to [Paternal Aunt] and that's why the language was in the previous order so mom is on notice that that's on the table and she's not here and the alleged dad is not here. So I think under the circumstances to keep that date open in January is just a waste of court resources [and] time and makes sense to go ahead and just order it today and place legal custody with [Paternal Aunt].

{¶ 6} The magistrate ordered the Agency to close its case and discharged the guardian ad litem from further duties. On December 8, 2021, the magistrate issued a decision finding it was in Jolie's best interest to grant legal custody of the child to Paternal Aunt. The magistrate's decision dismissed Mother's legal custody motion because of her failure to appear at the hearing and prosecute her motion, and vacated the January 4, 2022 evidentiary hearing on the legal custody motions.

{¶ 7} On December 10, 2021, Mother filed objections to the magistrate's decision, claiming that her failure to appear at the December 7, 2021 virtual hearing was solely due to technical problems she experienced in attempting to login to the hearing. Specifically, Mother asserted she attempted "to log into the Cisco WebEx application on a smart phone

---

2. It is puzzling why counsel would not object to proceeding in Mother's absence and volunteer information unhelpful to her.

for the December 7, 2021 hearing," and that "[d]uring said attempt to log-in, [she] was in a technological 'waiting' phase" for 15 to 20 minutes "once she did get logged into said app." Mother also requested that a transcript of the December 7, 2021 hearing be prepared. On January 20, 2022, the juvenile court summarily overruled Mother's objections to the magistrate's decision and denied her motion for a transcript.

{¶ 8} Mother now appeals, raising three assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT MOTHER IN VIOLATION OF THE DUE PROCESS CLAUSES OF THE UNITED STATES CONSTITUTION AND OF THE OHIO CONSTITUTION WHEN IT GRANTED BCDJFS' MOTION FOR LEGAL CUSTODY AT A VIRTUAL REVIEW HEARING AND FOUND MOTHER IN DEFAULT, WHO WAS TECHNOLOGICALLY UNABLE TO ATTEND, EVEN THOUGH A LATER IN-PERSON TRIAL DATE ON THE MOTION HAD BEEN SET.

{¶ 11} Mother argues that her due process rights were violated where the magistrate proceeded to award legal custody of Jolie to Paternal Aunt at the December 7, 2021 review hearing in Mother's absence and where the juvenile court subsequently did not allow Mother to explain her absence from the review hearing after she filed objections to the magistrate's decision. In Mother's words, the juvenile court "did not allow for a hearing on the objections nor permit mother the opportunity to provide proof of her attempt to attend the virtual hearing. If she was technologically precluded from attending, then she was effectively denied her opportunity to be heard." This assignment of error does not implicate the juvenile court's authority to award legal custody of Jolie to Paternal Aunt at the December 7, 2021 review hearing but whether the court's adoption of the magistrate's decision doing so comported with due process.

{¶ 12} "It is well recognized that the right to raise a child is an 'essential' and 'basic'

civil right." *In re Hayes*, 79 Ohio St.3d 46, 48 (1997). Furthermore, a parent's right to the custody of his or her child is "paramount" and one of the oldest fundamental liberty interests recognized by American courts. *Id.*; *In re A.N.B.*, 12th Dist. Preble No. CA2012-12-017, 2013-Ohio-2055, ¶ 13.

{¶ 13} The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Amstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187 (1965). Due process of law "implies, in its most comprehensive sense, the right of the person affected thereby to be present before the tribunal which pronounces judgment upon a question of life, liberty or property, to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of the right involved." *Williams v. Dollison*, 62 Ohio St.2d 297, 299 (1980).

{¶ 14} The concept of due process "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893 (1976). The United States Supreme Court has described the complexity of determining what process is due in a given situation:

> For all its consequence, "due process" has never been, and perhaps can never be, precisely defined. "[U]nlike some legal rules," * * * due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." Rather, the phrase expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.

(Citation omitted.) *Lassiter v. Dept. of Social Servs. of Durham Cty.*, 452 U.S. 18, 24-25, 101 S.Ct. 2153 (1981).

{¶ 15} In considering whether parental due process rights have been infringed, courts generally apply the test set forth by the United States Supreme Court in *Mathews v.*

*Eldridge. In re A.N.B.*, 2013-Ohio-2055 at ¶ 19. Under this test, courts must consider and weigh: (1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of additional safeguards; and (3) the governmental burden of additional safeguards. *Mathews* at 335.

{¶ 16} The first factor, the private interest affected, involves Mother's right to the care and custody of her child. This interest is an important, fundamental right that is affected by the juvenile court's legal custody determination.

{¶ 17} Turning to the second factor, the risk of an erroneous deprivation of Mother's interest by proceeding in her absence and without hearing from her is substantial, not minimal. Likewise, the probable value of affording Mother an opportunity to explain her absence from the review hearing after she filed objections to the magistrate's decision is also substantial. By contrast, the government's interest in resolving child protective services cases expeditiously and achieving permanency for children would not be significantly burdened by allowing Mother to be heard on her objection to the magistrate's decision.

{¶ 18} The record does not establish a pattern by Mother of not appearing or participating in the proceedings. To the contrary, the record shows that there were six hearings prior to the December 7, 2021 hearing, and that with the exception of a review hearing regarding Paternal Aunt's upcoming family vacation, Mother appeared at all the hearings, including the September 27, 2021 hearing which was also conducted virtually via WebEx. The juvenile court's grant of legal custody of Jolie to Paternal Aunt during the December 7, 2021 hearing in Mother's absence and its subsequent overruling of Mother's timely objection denied Mother the opportunity to be heard at a meaningful time and in a meaningful manner. As stated above, due process of law "implies * * * the right of the person affected thereby to be present before the tribunal which pronounces judgment upon a question of * * * liberty * * * , to be heard, by testimony or otherwise, and to have the right

of controverting, by proof, every material fact which bears on the question of the right involved." *Williams*, 62 Ohio St.2d at 299.

{¶ 19} Finally, we consider the governmental burden of additional safeguards. Two review hearings were conducted virtually via WebEx; Mother attended the September hearing but not the December hearing. For both hearings, the magistrate's order notified the parties that the hearing would be conducted remotely via WebEx and that instructions for use of the WebEx system could be found on the juvenile court's website, and listed the various devices one could use to join the WebEx hearing. The magistrate's orders further advised parties "to NOT appear in court in person." Noticeably, the magistrate's orders did not outline the steps or provide safeguards in the event any technological difficulties arose, such as the inability to login or join the hearing. As the Massachusetts Supreme Court has recognized, "this is an important protection and [we] urge judges to pay careful attention to the technology. If the technology does not function as described, it is crucial that the court suspend the hearing, rather than risk sacrificing certain of the defendant's constitutional rights." *Vazquez Diaz v. Commonwealth*, 487 Mass. 336, 342, 167 N.E.3d 822 (2021). *See also In re Aisjaha N.*, 343 Conn 709, 275 A.3d 1181 (2022) (noting that given the digital divide, courts must be especially vigilant to ensure the proper functioning of technology and that parties are not disadvantaged by an inability to meaningfully participate in virtual proceedings).

{¶ 20} Mother's failure to appear at the December 7, 2021 virtual hearing was the basis for the magistrate proceeding to award legal custody of Jolie to Paternal Aunt. There is no evidence in the record that the magistrate attempted to contact Mother or have her attorney do so to determine whether Mother had difficulties logging in the virtual hearing. The magistrate or the juvenile court never explained why it was in Jolie's best interest to proceed with a legal custody determination during the hearing in Mother's absence rather

than wait to make such a determination during the in-person custody hearing which was scheduled less than a month after the virtual hearing.

{¶ 21} Based on the facts of this case, we find that Mother's due process rights were violated where the magistrate proceeded to award legal custody of Jolie to Paternal Aunt at the December 7, 2021 review hearing in Mother's absence and where the juvenile court subsequently did not allow Mother to explain her absence from the review hearing after she filed objections to the magistrate's decision. We reverse the juvenile court's judgment and remand this case to the juvenile court to conduct a hearing affording Mother a meaningful opportunity to be heard upon her objections to the magistrate's decision awarding custody of Jolie to Paternal Aunt.

{¶ 22} Mother's first assignment of error is sustained.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE TRIAL COURT ERRED WHEN IT DENIED MOTHER APPELLANT'S REQUEST FOR A TRANSCRIPT AND RULED ON THE CASE WITHOUT A DE NOVO REVIEW OF ALL THE EVIDENCE.

{¶ 25} Assignment of Error No. 3:

{¶ 26} THE COURT'S CUSTODY ORDER IS NOT IN THE CHILD'S BEST INTERESTS AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 27} In her second assignment of error, Mother argues the juvenile court erred in denying her motion for a transcript and overruling her objections to the magistrate's decision without the benefit of a transcript. In her third assignment of error, Mother argues that the award of legal custody to Paternal Aunt is against the manifest weight of the evidence and not in Jolie's best interest. Our ruling on the first assignment of error renders these assignments of error moot and they need not be considered. App.R. 12(A)(1)(c); *In re K.S.*, 12th Dist. Fayette No. CA2021-09-020, 2022-Ohio-2827, ¶ 26.

{¶ 28} Judgment reversed and remanded.


HENDRICKSON and PIPER, JJ., concur.