[Cite as *In re Adoption of J.G.S.*, 2023-Ohio-1155.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| IN RE: ADOPTION OF J.G.S. | : | APPEAL NO. | C-220534 |
| | | TRIAL NO. | 2021000200 |
| | : | | |
| | : | | |
| | : | *O P I N I O N.* | |

Appeal From: Hamilton County Court of Common Pleas, Probate Division

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: April 7, 2023

*James J. Whitfield*, for Appellant Father,

*Mark C. Epply* for Appellee C.S.

**Bock, Judge.**

{¶1}  Appellant Father challenges the adoption of his birth son, J.G.S., by appellee C.S. In two assignments of error, Father contends that the adoption was contrary to J.G.S.'s best interest under R.C. 3107.161. We disagree, overrule his assignments of error, and affirm the probate court's judgment.

## I.  Facts and Procedure

{¶2}  When J.G.S. was born in 2011, his birth parents were unmarried. Three months later, Father left the picture amidst substance-abuse issues and periods of incarceration. Mother also struggled with substance-abuse issues of her own and spells of incarceration. When he was three years old, J.G.S.'s maternal grandmother was granted legal custody over him. But when she, too, became incarcerated in 2016, Mother's childhood friend C.S. was awarded custody of J.G.S. At the time, Father was incarcerated and Mother failed to appear at the custody hearing.

{¶3}  In January 2021, C.S. petitioned to adopt eight-year-old J.G.S. Weeks later, Mother objected to the adoption. Roughly seven months later, Father's attorney filed a notice of appearance. After a hearing, the magistrate found that Father's and Mother's consent was not necessary to proceed with the adoption.

{¶4}  Father objected to the magistrate's decision, arguing that his consent was required under Ohio's adoption laws. The probate court overruled Father's objections. First, the court noted that Father had been served with notice of the adoption petition and failed to file an objection, obviating the need for his consent under R.C. 3107.07(K). Second, the court found that Father had failed, without justifiable cause, to provide for the maintenance and support of J.G.S. in the one-year period before his placement with C.S. and the one-year period before C.S. petitioned for adoption. *See* R.C. 3107.07(A). Third, the probate court found that Father lacked

2

justifiable cause due to his failure to maintain de minimis contact with J.G.S. in the year before his placement with C.S. and the year before C.S. filed the adoption petition. *See id.* Neither Mother nor Father appealed the probate court's R.C. 3107.07 determination that their consent to J.G.S.'s adoption was unnecessary.

{¶5} Next, the magistrate held two best-interest hearings, where C.S., C.S.'s father, Father, and Mother testified. In addition, the parties presented Facebook messages between the parties and the child, photographs, an Ohio Department of Job and Family Services ("ODJFS") adoption assessment, and legal documents. The evidence established that J.G.S. successfully integrated into and bonded with C.S.'s family. By all accounts, J.G.S. and C.S.'s two daughters considered one another siblings. J.G.S. knew C.S.'s father as "pawpaw." J.G.S. was doing well in school and in the community—he was a successful fifth grader with plenty of friends and hobbies.

{¶6} The evidence also demonstrated that both Father and Mother had worked hard to rehabilitate themselves, recover from their addictions, and restore a sense of stability in their lives. Yet, Father's and Mother's testimony revealed a lack of involvement in, and knowledge of, J.G.S.'s life. Father accepted responsibility for leaving J.G.S. in the first months of his life. He explained that he now was sober and wanted to be in his son's life. The evidence indicates that he began paying some child support in 2020 and filed for custody of his son after C.S. filed the adoption petition. Similarly, Mother had achieved sobriety and established a family of her own.

{¶7} Both Father and Mother testified that they were prevented from having any contact with J.G.S. after 2016. Facebook messages in the record show that C.S. periodically spoke with Father, telling him about J.G.S. and informing him that J.G.S. was curious about Father. The conversations occasionally became contentious. C.S. acknowledged as much but was concerned with Father's reliability and the potential

impact on J.G.S.'s mental and emotional health. In addition, the record includes Facebook messages from J.G.S. to Mother, where J.G.S. told her that he loved her and missed her. Mother recalled a subsequent emotional and tearful 12-minute video call.

{¶8} In an in-camera interview, J.G.S. described feeling "very happy" with C.S. and her daughters, who he referred to as his "mom" and his "sisters." He felt close to everyone in C.S.'s family, and importantly, felt safe. He liked his school and had established friendships. He unequivocally wanted to be adopted and acknowledged the possibility that he may lose contact with his birth parents if he were adopted.

{¶9} Following the hearing, the magistrate analyzed the relevant best-interest factors under R.C. 3107.161(B) and found that granting the adoption petition was in J.G.S.'s best interest. The magistrate incorporated all previous findings, recounted J.G.S.'s custodial history and described C.S.'s continued care of J.G.S. The magistrate acknowledged Mother's and Father's rehabilitation and increased stability, as well as their testimony emphasizing the need for J.G.S. to know his family history. But the magistrate noted that Mother and Father both failed to appear at the 2016 custody hearing and were unaware of *who* had custody of their son. Further, Father had no contact with J.G.S. and paid no support until 2019. And both Mother and Father admitted that they knew nothing about J.G.S. Likewise, J.G.S. had no memory of Father and expressed a clear desire to be adopted. Ultimately, the stability and permanence of C.S.'s family weighed in favor of adoption because J.G.S. "will feel more like he is part of the family unit after the adoption" and will not be scared that "one of his parents might file for custody and take him away from the home that he knows."

{¶10} The magistrate rejected Father's argument that J.G.S.'s placement with C.S. was not the least-detrimental alternative available. While the magistrate found Father's and Mother's desire to be in J.G.S.'s life sincere, they failed to show that being

4

adopted by C.S. was *not* the least-detrimental alternative. Rather, C.S. provided safety and stability, and J.G.S. lacked a relationship with his birth parents. The magistrate explained that adoption is "not about the best interest of the biological parents and the effects on them," and their desires were outweighed by the substantial benefits that C.S.'s day-to-day influence would provide to J.G.S.

{¶11} Father objected. The probate court overruled his objection and adopted the magistrate's findings of fact and conclusions of law. The court found that the adoption was in J.G.S.'s best interest under R.C. 3107.161 because "[n]either [Father] nor [Mother] provided material evidence that granting the adoption would not be in the minor's best interest nor did either of them establish that the current placement is not the least detrimental alternative." Rather, the probate court concluded that C.S. is "suitable and qualified to care for and rear the minor."

## II.    Law and Analysis

{¶12}   In two assignments of error, Father challenges the probate court's decision to grant the adoption petition. First, he contends that concluding that the adoption was in J.G.S.'s best interest constituted an abuse of discretion. He maintains that he satisfied his burden under R.C. 3107.161(C). Second, he maintains that C.S. failed to prove that the adoption was the least-detrimental available alternative for safeguarding J.G.S.'s growth and development under R.C. 3107.161(B)(1).

### The Adoption was in J.G.S.'s Best Interest

{¶13} Adoption cases are typically fact specific, and the decision to grant or deny an adoption petition "must be made on a case-by-case basis." *In re J.A.M.,* 2d Dist. Greene No. 2022-CA-14, 2022-Ohio-2313, ¶ 8, quoting *In re Adoption of Charles B.,* 50 Ohio St.3d 88, 94, 552 N.E.2d 884 (1990). The probate court maintains "broad discretion in making th[at] determination," which we review for an abuse of

5

discretion. *Id.* A trial court abuses its discretion when its decision is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). And the probate court is in the best position to weigh the testimony and assess the credibility of the witnesses. *In re Adoption of Lauren Marie Tucker*, 11th Dist. Trumbull No. 2002-T-0154, 2003-Ohio-1212, ¶ 11, citing *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). Therefore, we may not "substitute [our] judgment for that of the probate court when competent, credible evidence supports the probate court's decision." *In re Adoption of M.R.P.,* 2022-Ohio-1631, 189 N.E.3d 841, ¶ 20 (12th Dist.), citing *In re Adoption of Cotner*, 12th Dist. Fayette Nos. CA2002-02-004 and CA2002-02-005, 2002-Ohio-5145, ¶ 5.

{**¶14**} Ohio adoption proceedings are a "two-step process, which involves a 'consent' phase and a 'best interests' phase." *In re Adoption of S.J.M.H.,* 1st Dist. Hamilton No. C-130683, 2014-Ohio-3565, ¶ 15, citing *In re Adoption of Jordan*, 72 Ohio App.3d 638, 645, 595 N.E.2d 963 (10th Dist.1991). When consent of the birth parents is not required to proceed with the adoption, as it was here, the probate court's analysis must prioritize the child's best interest when granting or denying the adoption petition. *See* R.C. 3107.14(C). Ohio courts agree that a person petitioning the court for an adoption retains the ultimate burden of proving that the adoption is in the child's best interest under R.C. 3107.161(B). *In re M.R.P.* at ¶ 19 (collecting cases).

{**¶15**} In addition to any other relevant factors, R.C. 3107.161(B) identifies 11 best-interest factors that must be considered in an adoption proceeding:

1.) The least detrimental available alternative for safeguarding the
    child's growth and development;

2.) The age and health of the child at the time the best interest determination is made, and if applicable, at the time the child was removed from the home;

3.) The wishes of the child in any case in which the child's age and maturity makes this feasible;

4.) The duration of separation of the child from a parent;

5.) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;

6.) The likelihood of safe reunification with a parent within a reasonable period of time;

7.) The importance of providing permanency, stability, and continuity of relationships for the child;

8.) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

9.) The child's adjustment to the child's current home, school and community;

10.) The mental and physical health of all persons involved in the situation; and

11.) Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of any criminal offense involving any act that resulted in a child being abused or neglected[,] * * * a violation of section 2919.25 of the Revised Code involving a victim

who at the time of the commission of the offense was a member of the person's family or household; [or] * * * any offense involving a victim who at the time of the commission of the offense was a member of the person's family or household and caused physical harm to the victim in the commission of the offense.

While the probate court must consider each factor in its best-interest analysis, no single factor controls. *See In re L.L.,* 1st Dist. Hamilton No. C-200058, 2020-Ohio-5609, ¶ 8, citing *In re M., R., & H. Children,* 1st Dist. Hamilton No. C-170008, 2017-Ohio-1431, ¶ 34.

{¶16} Here, the magistrate analyzed the relevant best-interest factors. The magistrate concluded that adoption was the least-detrimental alternative available. *See* R.C. 3107.161(B)(1) and 3107.161(C). Further, J.G.S. wanted to be adopted, Father was absent for nearly J.G.S.'s entire life, C.S. provides a stable familial relationship, and granting the petition would provide a greater amount of certainty in J.G.S.'s life. *See* R.C. 3107.161(B)(3)-(5). The magistrate recognized the increased stability in Mother's and Father's lives. *See* R.C. 3107.161(B)(6). But again, the magistrate noted that adoption provided J.G.S. with permanency, stability, and continuity in his relationships. *See* R.C. 3107.161(B)(7). And J.G.S. is "very close" with C.S.'s daughters and her father. *See* R.C. 3107.161(B)(8). Finally, J.G.S. was well-adjusted to his home, school, and community. *See* R.C. 3107.161(B)(9).

{¶17} Yet, Father maintains that his testimony "touch[ed] on nearly all of the factors." Specifically, he argues that denying the adoption was the least-detrimental available alternative for the child in light of his testimony that he did not want to interfere with J.G.S.'s "current arrangement." His testimony stressed J.G.S.'s need, as a biracial child, to know his background. He emphasizes his current employment,

sobriety, and desire to be a positive role model in J.G.S.'s life. But these contentions generally focus on portions of his testimony that support his position and elude any consideration of contrary evidence in the record.

{¶18} When we consider the entirety of the record, the evidence is consistent with the magistrate's and probate court's conclusion that granting the adoption was in J.G.S.'s best interest. J.G.S.'s wishes, as expressed to the magistrate in the in-camera interview and in the ODJFS assessment, made clear that J.G.S. wanted to be adopted by C.S., and considered C.S. and her two daughters his family. In addition, J.G.S. did "not wish to have a relationship" with his birth parents according to both the May 2021 ODJFS assessment and subsequent in-camera interview. Significantly, J.G.S. had no history or relationship with Father. Father admitted as much. The ODJFS report states that C.S. "has been a stable mother figure" for J.G.S. and he felt "safe and loved in C.S.'s home and would not want anything to change." Finally, all evidence indicates that J.G.S. was well adjusted to his current home, school, and community–he was "bright and mature," was "well-behaved both at home and at school," played baseball, played with his friends frequently, and was "a good student and excels at both math and science." The record is replete with evidence supporting the magistrate's and probate court's conclusions.

{¶19} We recognize the work done by Father to improve his life and his desire to repair his role as a parent. While we applaud Father's efforts, the goal of adoption in Ohio "is to protect the best interest of the child." *In re Hitchcock,* 120 Ohio App.3d 88, 104, 696 N.E.2d 1090 (8th Dist.1996), citing *In re Adoption of Zschach*, 75 Ohio St.3d 648, 665 N.E.2d 1070 (1996). The law emphasizes the welfare of the child, " 'specifically those children who lack and are in need of the security and benefits of a loving home and family.' " *Id.* quoting *In re Harshey*, 45 Ohio App.2d 97, 102, 341

N.E.2d 616 (1975). Indeed, the statutory framework and case law both elevate the best interest of the child over the rights of others in an adoption proceeding. *See In re Ridenour,* 61 Ohio St.3d 319, 322, 574 N.E.2d 1055 (1991). While the magistrate acknowledged Father's progress, desires, and emphasis on his familial history, she properly centered J.G.S.'s welfare in her best-interest analysis. It was therefore reasonable for the magistrate and probate court to conclude that granting the adoption petition was in J.G.S.'s best interest. We overrule the first assignment of error.

<u>Granting the Adoption was the Least-Detrimental Alternative Available</u>

**{¶20}** In his second assignment of error, Father argues that C.S. failed to satisfy her burden to prove that the adoption was in J.G.S.'s best interest. Father claims that C.S. failed to produce evidence that an adoption was the least-detrimental available alternative for safeguarding J.G.S.'s growth and development under R.C. 3107.161(B)(1). Assuming, without deciding, that a petitioner carries any burden involving the least-detrimental available alternative under R.C. 3107.161(B)(1), C.S. satisfied that burden. *See* R.C. 3107.161(C); s*ee also In re Adoption of M.R.P.,* 2022-Ohio-1631, 189 N.E.3d 841, ¶ 18 (12th Dist.) ("person opposing adoption also has the burden to establish that the child's placement is 'not the least detrimental available alternative.' "). Father fails to acknowledge the overwhelming evidence in the record demonstrating as much.

**{¶21}** While an adoption petitioner retains the burden of persuading the probate court that granting the adoption is in the best interest of the child, a party opposing an adoption bears the burden of providing "material evidence" of the child's best interest and "establish[ing] that the child's current placement is not the least detrimental available alternative." R.C. 3107.161(C). The "least detrimental available alternative" is "the alternative that would have the least long-term negative impact on

the child." R.C. 3107.161(A). In other words, a party opposing an adoption, like Father in this case, must identify an alternative which, relative to the current placement, offers the greater amount of long-term advantages to the child.

{¶22} The magistrate and probate court determined that Father failed to provide evidence that the adoption was not the least-detrimental alternative. In contrast, the magistrate found that C.S. provided material evidence demonstrating how adoption was the least-detrimental alternative available. The magistrate explained that C.S. provided a stable, loving home for J.G.S. where he is happy. The record supports this conclusion. Testimony from C.S. and her father, the ODJFS report, the in-camera interview, and Father's own testimony demonstrate that C.S. provided J.G.S. with stability, family, and support. He was experiencing success in academics and in his social life. And significantly, the in-camera interview made clear that J.G.S. expressed fear over the possibility of the adoption petition being denied. The evidence supports the magistrate's and probate court's findings. We therefore overrule Father's second assignment of error.

### III.   Conclusion

{¶23} We overrule Father's two assignments of error and affirm the probate court's judgment granting C.S.'s petition to adopt J.G.S.

Judgment affirmed.

**CROUSE, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.