[Cite as *In re Adoption of D.C.H.*, 2025-Ohio-5684.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

IN RE:  THE ADOPTION OF:

    D.C.H.

[D.E. - APPELLANT]
[A.M. - APPELLANT]

CASE NO. 3-25-08

OPINION AND
JUDGMENT ENTRY

---

**Appeal from Crawford County Common Pleas Court
Probate Division
Trial Court No. 00001112**

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:  December 22, 2025**

---

APPEARANCES:

    *Clayborne B. Johnson, III* **for Appellants**

    *Samuel Zimmerman* **for Appellee**

**WILLAMOWSKI, J.**

{**¶1**} Father-appellant A.M. and mother-appellant D.E. appeal the judgment of the Probate Division of the Crawford County Court of Common Pleas, challenging the trial court's decision to permit the adoption of D.C.H. to petitioner-appellees G.H. and L.H. (collectively "the petitioners"). For the reasons set forth below, the judgment of the trial court is affirmed in part and reversed in part.

*Facts and Procedural History*

{**¶2**} A.M. and D.E. are the biological parents of D.C.H. When D.C.H. was several months old, D.E. was incarcerated in connection with a drug-related issue. At this time, D.C.H.'s grandmother was not able to care for him but was put into contact with the petitioners through a mutual acquaintance. Since the petitioners were willing to provide for D.C.H., he went into their care in 2015 when he was roughly seven months old. The petitioners were subsequently granted custody of D.C.H.

{**¶3**} After D.E. was released from prison, she began to have visitation with D.C.H. In January of 2016, D.E. had an opportunity to regain custody of the child, but this effort was ultimately unsuccessful because D.E. was not able to comply with the requirement that she produce a drug-free test. In July of 2023, D.E.'s visitation schedule was modified when D.C.H. was around nine years old. Under

this new schedule, D.C.H.'s visitation alternated between a week in which he went to D.E.'s house from Thursday to Sunday and a week in which he went to D.E.'s house for an overnight stay on Thursday.

{¶4} On April 4, 2024, G.H. and L.H. filed a petition to adopt D.C.H. This petition alleged that the consent of the natural parents was not necessary for the adoption to proceed because, in the year preceding the petition, D.E. had not provided support to D.C.H. and A.M. had not provided support or had more than de minimis contact with D.C.H. In response, D.E. and A.M. filed objections to the adoption. At this time, A.M. was in prison and had been incarcerated since 2018. After A.M. filed a request for counsel, the trial court appointed counsel to represent him in this proceeding.

{¶5} On June 5, 2024, an adoption assessor, Sarah Dean ("Dean"), submitted a report to the trial court. Across this proceeding, Dean had discussions with D.C.H. on three occasions. In her report, she noted that the petitioners reported that D.C.H. had struggled academically and behaviorally since the visitation schedule had been modified. The report concluded that the adoption was in the best interests of the child.

{¶6} On July 18, 2024, A.M. filed a memorandum that alleged he had contacted D.C.H. over the phone in the year preceding the adoption petition while D.C.H. was on visitation with D.E. D.E. subsequently filed an affidavit in which

she averred that she had regularly facilitated phone conversations between D.C.H. and A.M. "everyday" that D.C.H. had visitation with her. (Doc. 24).

{¶7} On October 30, 2024, the trial court conducted an in camera interview with D.C.H. at the request of the parties. On January 13, 2025, the trial court held a final hearing on the adoption petition. While A.M. was not present, his attorney appeared on his behalf. D.E., L.H., G.H., D.E.'s attorney, and the petitioners' attorney were also in attendance.

{¶8} At the hearing, payment records from the Crawford County Child Support Enforcement Agency ("CSEA") were submitted to the trial court. The payment report for D.E. indicated that she had a monthly obligation of $150.56 and had not made a single payment through the CSEA in the year preceding the adoption petition. The payment report for A.M. indicated that he had a monthly obligation of $97.92 and had paid an average of $1.65 per month in the year preceding the adoption petition.

{¶9} Based on these records, the trial court concluded that A.M. and D.E. had failed to provide D.C.H. with maintenance and support in the year preceding the adoption without justifiable cause. The trial court also found that the allegations of A.M.'s regular phone communications with D.C.H. were not verified or supported by any records from the prison or any other evidence. After considering the information presented, the trial court concluded that A.M. failed to have more

than de minimis contact with D.C.H. in the relevant timeframe without justifiable cause.[1]

{¶10} During the best-interest phase of this proceeding, G.H., L.H., Dean, D.E., D.C.H.'s half-sister, and D.C.H.'s grandmother testified. On February 14, 2025, the trial court issued a judgment entry that found that the consent of the natural parents was not required for the adoption to proceed and that the adoption was in the best interest of the child. As a result, the trial court granted the petition for adoption.

{¶11} A.M. filed his notice of appeal on March 17, 2025. On appeal, he raises the following four assignments of error:

**A.M.'s First Assignment of Error**

**The trial court erred in finding that appellant's consent was not required due to failing to provide more than de minimis contact with the child for at least one year preceding the petition without justifiable cause.**

**A.M.'s Second Assignment of Error**

**The trial court erred in finding that appellant's consent was not required due to failing to provide support for at least one year preceding the petition without justifiable cause.**

---

[1] On January 13, 2025, the parties presented evidence on the issue of whether the consent of the natural parents was necessary for the adoption to proceed. However, this portion of the hearing was conducted "off the record" and lasted for roughly forty-five minutes. (Tr. 3). The trial court then summarized the evidence and its findings on the record.

**A.M.'s Third Assignment of Error**

**The trial court violated appellant-father's due process rights by terminating his parental rights without meaningful opportunity to be heard.**

**A.M.'s Fourth Assignment of Error**

**The trial court erred and abused its discretion by disregarding material evidence in its best interest analysis.**

D.E. filed her notice of appeal on March 12, 2025. On appeal, she raises the following three assignments of error:

**D.E.'s First Assignment of Error**

**The trial court erred in finding that the appellees had no burden to prove that the adoption was in the best interest of the child.**

**D.E.'s Second Assignment of Error**

**The trial court erred by ignoring the material evidence put forth by the contesting party regarding the best interest determination and that the child's current placement is not the least detrimental alternative.**

**D.E.'s Third Assignment of Error**

**The trial court erred in granting the adoption and its granting was against the manifest weight of the evidence.**

We will consider A.M.'s third assignment of error before we examine his first and second assignments of error. We will then consider D.E.'s first assignment of error before we conclude by examining D.E.'s second, D.E.'s third, and A.M.'s fourth assignments of error together in one analysis.

*A.M.'s Third Assignment of Error*

**{¶12}** A.M. argues that he was not given a meaningful opportunity to be heard before the petition for adoption was granted.

Legal Standard

**{¶13}** A natural parent has a fundamental right to "raise and nurture their children." *In re Adoption of A.E.C.*, 2024-Ohio-5559, ¶ 16 (3d Dist.), quoting *In re Adoption of Masa*, 23 Ohio St.3d 163, 165 (1986). Since the adoption of a child results in the termination of this "constitutionally protected liberty interest," due process protections apply to adoption proceedings. *In re Adoption of A.M.*, 2014-Ohio-2833, ¶ 11 (6th Dist.). In general, due process requires that a natural parent has adequate notice and a meaningful opportunity to be heard before any parental rights are terminated through an adoption proceeding. *In re Adoption of A.J.W.*, 2023-Ohio-2609, ¶ 20 (2d Dist.); *In re Adoption of S.L.P.*, 2020-Ohio-495, ¶ 11 (8th Dist.); *In re Baby Girl E*, 2005-Ohio-3565, ¶ 21 (10th Dist.).

**{¶14}** In examining whether a parent's due process rights were violated, "courts generally apply the test set forth by the United States Supreme Court in *Mathews v. Eldridge*." *In re Adoption of A.N.B.*, 2013-Ohio-2055, ¶ 19 (12th Dist.), citing *Mathews*, 424 U.S. 319, 334-335 (1976). *See also In re Adoption of M.M.F.*, 2019-Ohio-448, ¶ 16 (5th Dist.); *In re J.C.B.*, 2022-Ohio-3098, ¶ 15 (12th Dist.). "Under this test, courts must consider and weigh: (1) the private interest affected;

(2) the risk of erroneous deprivation and the probable value of additional safeguards; and (3) the governmental burden of additional safeguards." *A.N.B.* at ¶ 19, citing *Mathews* at 335.

{¶15} Importantly, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews* at 334. Thus, in a context where a parent is incarcerated, "there is no due process violation when . . . [that] parent does not appear at a parental rights termination hearing, as long as the parent has alternate means of participating." *A.N.B.*, 2013-Ohio-2055, at ¶ 25 (12th Dist.). *See In re Adoption of Z.A.-O.J.*, 2016-Ohio-3159, ¶ 30 (5th Dist.). Alternative means of participation have included the appointment of counsel; the use of affidavits or depositions to introduce evidence; and telephonic or electronic participation. *In re Adoption of I.M.M.*, 2016-Ohio-5891, ¶ 18 (5th Dist.).

Legal Analysis

{¶16} On appeal, A.M. does not challenge the adequacy of the notice he received. Rather, he asserts that he did not have a meaningful opportunity to be heard before the adoption was granted and that his due process rights were, as a result, violated in this case. We will consider A.M.'s arguments in light of the three factors from the test set forth in *Mathews*, 424 U.S. 319, at 335. As to the first factor, the private interest at issue in this proceeding was A.M.'s right to the care and custody of his child. *A.N.B.*, 2013-Ohio-2055, at ¶ 20 (12th Dist.).

{¶17} Second, to determine the risk of erroneous deprivation of this interest and the value of any additional procedural safeguards, we must "in essence . . . consider[] . . . the strength of the parent's case." *A.N.B.* at ¶ 21. In this situation, the trial court found that A.M.'s consent was not necessary because he did not provide support to D.C.H. or engage in more than de minimis contact. The trial court then concluded that the adoption was in D.C.H.'s best interests. On appeal, A.M. asserts that he could have provided evidence about the bond he had with his child and the contact he had with D.C.H. if he had an increased level of participation.

{¶18} As an initial matter, we note that trial court did receive evidence about these matters. D.E. and D.C.H.'s half-sister testified at the hearing about the level of contact that A.M. had with his child. These witnesses also discussed the relationship between A.M. and D.C.H. Prior to the hearing, D.E. also submitted an affidavit that discussed the contact that she facilitated between A.M. and D.C.H. during her visitation time.

{¶19} In terms of A.M.'s participation in this process, the trial court appointed counsel to represent him in the early stages of this proceeding after he had filed a request for an attorney. *See In re Adoption of Y.E.F*., 2020-Ohio-6785, ¶ 33. This court-appointed counsel was at the adoption hearing and also filed two documents that represented A.M.'s position on the issues of parental consent and

D.C.H.'s best interests. Further, the witnesses called to testify at the hearing were ably examined.

{¶20} As to the third factor, the key governmental interests in an adoption proceeding are the welfare of the child in addition to the typical considerations of minimizing administrative burdens and fiscal costs. *See In re Adoption of N.F.*, 2019-Ohio-5380, ¶ 22 (3d Dist.); *M.M.F.*, 2019-Ohio-448, at ¶ 17 (5th Dist.). In this case, the government did shoulder the costs of appointing an attorney to represent A.M. However, we note that A.M. does not identify any additional procedural safeguards in his brief that he believes the trial court should have utilized in this case.

{¶21} Further, while methods of participation existed in addition to having court-appointed counsel, the record contains no indication that A.M. ever requested a deposition; sought to file an affidavit; or asked to appear electronically. In fact, he has not identified any request that he made for any type of participation in this proceeding that was then denied by the trial court.

{¶22} The testimony that A.M. wanted to provide about his relationship with D.C.H. could have, based on the general description in his brief, been offered by way of a deposition or affidavit, but the record contains no indication that A.M. ever sought to present any evidence through these avenues. *See Z.A.-O.J.*, 2016-Ohio-3159, at ¶ 32 (5th Dist.); *In re N.L.T.*, 2015-Ohio-433, ¶ 9 (9th Dist.).

{¶23} In summary, the trial court heard evidence about A.M.'s relationship and contact with D.C.H. The record does not contain any indication that A.M. sought to offer testimony through an affidavit or deposition and was denied. He was also afforded an opportunity to participate in this proceeding through his court-appointed counsel. *N.L.T.* at ¶ 8 ("[A]n incarcerated parent's right to due process is not violated when the parent is represented by counsel at the hearing, a full record of the proceedings is made, and any testimony that the parent may wish to present could be offered by way of deposition."), quoting *In re C.M.*, 2007-Ohio-3999, ¶ 24 (9th Dist.). Given these circumstances, we conclude that A.M.'s due process rights were not violated. Accordingly, A.M.'s third assignment of error is overruled.

*A.M.'s First Assignment of Error*

{¶24} A.M. argues that the trial court erred in concluding that he did not have more than de minimis contact with D.C.H. without justifiable cause and that his consent was, therefore, not required for the adoption to proceed.

Legal Standard

{¶25} Pursuant to R.C. 3107.14(C), a probate court may issue a decree granting an adoption after finding "[1] that the required consents have been obtained or are not necessary and [2] that the adoption is in the best interest of the person sought to be adopted . . . ." Based on these required determinations, adoption

proceedings are typically comprised of a "consent phase" and a "best interest phase." *Matter of Adoption of E.G.B.*, 2025-Ohio-3005, ¶ 12 (2d Dist.).

**{¶26}** As to the consent phase, R.C. 3107.06 provides that the adoption of a minor child generally cannot proceed without the written consent of the natural parents. However, R.C. 3107.07 provides statutory exceptions to this general rule. *See In re Adoption of S.S.*, 2017-Ohio-8956, ¶ 16 (3d Dist.). In turn, R.C. 3107.07(A) reads, in its relevant part, as follows:

> Consent to adoption is not required of any of the following:
>
> (A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor *or* to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding the filing of the adoption petition or the placement of the minor in the home of the petitioner.

(Emphasis added.).[2] Since "R.C. 3107.07(A) is written in the disjunctive," the "failure without justifiable cause to provide *either* more than de minimis contact

---

[2] We are aware that an amendment revising the language in R.C. 3107.07(A) became effective in March of 2025. This modified provision now reads as follows:

> A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to have more than de minimis contact with the minor or to provide meaningful and regular maintenance and support of the minor as required by law or judicial decree for a period of one year immediately preceding the filing of the adoption petition.

However, the judgment entry granting the petition for adoption was issued on February 14, 2025 in this case. For this reason, both parties have appropriately formulated arguments based upon the language from the prior version of R.C. 3107.07(A) that was effective during the proceedings before the trial court.

with the minor or maintenance and support for the one-year time period is sufficient to obviate the need for a parent's consent." (Emphasis sic.) *In re Adoption of K.C.*, 2014-Ohio-3985, ¶ 21 (3d Dist.).

**{¶27}** A two-step analysis is generally used to determine whether the exception to parental consent set forth in R.C. 3107.07(A) is applicable.[3] *In re Adoption of A.M.V.*, 2024-Ohio-1240, ¶ 33 (3d Dist.).

> The first step involves the factual question of whether the petitioner has proven, by clear and convincing evidence, the natural parent failed to provide for the maintenance and support of the child or failed to have more than de minimis contact with the child.

*In re Adoption of C.H.B.*, 2020-Ohio-979, ¶ 21 (3d Dist.).

> Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.

*In re Adoption of Ford*, 2006-Ohio-1889, ¶ 5, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

**{¶28}** In this process, "[p]robate courts have much discretion over factual determinations—like whether there has been more than de minimis contact—and those determinations will not be disturbed absent an abuse of discretion." *In re*

---

[3] We are aware that the Supreme Court of Ohio has indicated that this analysis may involve a third step in cases where a no contact order or a child support order exists. *In re A.K.*, 2022-Ohio-350, ¶ 15; *In re Adoption of B.I.*, 2019-Ohio-2450, ¶ 14. *See also A.M.V.*, 2024-Ohio-1240, at fn. 1. (3d Dist.).

*Adoption of D.X.B.*, 2025-Ohio-2354, ¶ 10 (2d Dist.). An abuse of discretion is more than an error of judgment and is present where a determination is unreasonable, arbitrary, or unconscionable. *In re Adoption of B.G.F.*, 2018-Ohio-5063, ¶ 25 (3d Dist.). Under this standard, an appellate court is not to substitute its judgment for the one rendered by the trial court. *Schroeder v. Niese*, 2016-Ohio-8397, ¶ 7 (3d Dist.).

{¶29} If the petitioner establishes a failure to engage in more than de minimis contact or to provide maintenance and support, the trial court proceeds to the second step and must determine whether the parent had justifiable cause for this failure. *In re Adoption of M.R.W.*, 2023-Ohio-4705, ¶ 17 (3d Dist.). At this point, the parent is "to show some facially justifiable cause for the failure." *Id*. at ¶ 11, quoting *In re A.N.B.*, 2012-Ohio-3880, ¶ 10 (12th Dist.). However, the petitioner retains "the burden of proving by clear and convincing evidence that the parent lacked justifiable cause." *A.M.V.*, 2024-Ohio-1240, at ¶ 33 (3d Dist.).

{¶30} In approaching the issue of "justifiable cause," the Supreme Court of Ohio has declined "to adopt a 'precise and inflexible meaning'" for this term, "but instead has stated, "the better-reasoned approach would be to leave to the probate court as finder of fact the question of whether or not justifiable cause exists." *M.R.W.* at ¶ 30, quoting *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 367 (1985).

**{¶31}** A trial court's determination on the issue of justifiable cause is reviewed under a manifest weight standard. *M.R.W.* at ¶ 17. Thus, an appellate court will

> weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

*In re Adoption of C.L.Y.*, 2022-Ohio-1133, ¶ 10 (3d Dist.). In this process, appellate courts "must be mindful that the [trial] court is in the best position to observe the demeanor of the parties and assess the credibility and accuracy of the testimony." *Id.*, quoting *In re Adoption of L.C.W.*, 2015-Ohio-61, ¶ 14 (3d Dist.).

Legal Analysis

**{¶32}** A.M. asserts that the trial court erred in concluding that his consent was not necessary for the adoption to proceed on the grounds that he failed to engage in more than de minimis contact with D.C.H. in the year preceding the petition without justifiable cause. In examining this argument, we begin by noting that contact is not limited to "physical visitation with a child" but can include various forms of correspondence, such as phone calls, gifts, cards, or letters. *In re Adoption of A.M.D.*, 2016-Ohio-6976, ¶ 17 (7th Dist.).

-15-

{¶33} Turning to the evidence in this case, the adoption assessor, Sara Dean ("Dean"), testified at the hearing on January 13, 2025. During her testimony, the following exchange occurred on direct examination:

> [Attorney:] . . . And throughout your time with the child, did he ever indicate in any way, shape, or form to you that he had any contact with his biological father?
>
> [Dean:] The biological father has never been, ever, a part of a discussion, anything, ever with him.
>
> [Attorney:] So there's—you have nothing that would indicate he ever had . . . contact—
>
> [Dean:] No.

(Tr. 41-42). Dean then affirmed that, during their discussions, D.C.H. had never indicated that he had contact with A.M.

{¶34} D.C.H.'s half-sister then testified that D.C.H. spoke with A.M. "[e]very day he's with us" and "multiple times" during his visitation with D.E. (Tr. 142). D.E. also filed an affidavit that stated she facilitated contact between D.C.H. and A.M. "everyday he would be with me for my parenting time." (Doc. 24). At the hearing, D.E. testified that A.M. generally communicated on Thursday nights over the past year through phone calls and video calls. While D.E. stated this routine had varied over time, she testified at the hearing that A.M. had communicated with D.C.H. consistently since she had visitation.

{¶35} On appeal, the petitioners assert that the testimony on this issue was inconsistent because D.C.H.'s half-sister testified that he communicated with A.M. multiples times during each period of visitation while D.E. "described a far more constrained schedule of calls . . . ." (Appellees' Brief, 21). At the hearing, the trial court also noted that no log records from the prison were produced by A.M. to establish the frequency or timing of these communications.

{¶36} In evaluating the evidence about the alleged contacts between D.C.H. and A.M., the trial court ultimately found the following:

> The father may have had a few phone contacts with his son during mothers visitation within one year of the petition but the extent of the same was never developed and it appears may have only happened since the petition was filed, either way this court determines by clear and convincing evidence that these facts constitutes [sic] father[']s failure to provide more than de minimis contact . . . .

(Doc. 37). In examining this conclusion, we remain mindful of the fact that the trial court observed these witnesses testify and was, for this reason, in a better position to evaluate the credibility of their statements. *C.L.Y.*, 2022-Ohio-1133, at ¶ 10 (3d Dist.). Having reviewed the evidence in the record, we conclude that the trial court did not abuse its discretion in concluding that A.M. did not engage in more than de minimis contact with D.C.H.

{¶37} Turning to the issue of justifiable cause, we again note that "contact" encompasses forms of communication outside of in-person visitation. Since "contact" encompasses forms of communication outside of in-person visitation, "the

incarceration of a parent generally 'does not justify the failure to have more than de minimis contact with the child. . . .'" *In re Adoption of G.A.J.-K.*, 2025-Ohio-1276, ¶ 46 (2d Dist.), quoting *In re A.J.W.*, 2024-Ohio-3124 (2d Dist.).  For this reason, "[i]ncarceration alone is not a justifiable excuse, even if it lasts for the entire period considered by the court." *Z.A.-O.J.*, 2016-Ohio-3159, at ¶ 27 (5th Dist.).

{¶38} Further, A.M. does not raise any arguments on appeal that seek to establish that he had a justifiable cause for his failure to have more than de minimis contact with D.C.H.  Having examined the relevant evidence, we conclude that the record supports the trial court's finding that A.M. did not have justifiable cause for his failure to engage in more than de minimis contact with D.C.H.  Accordingly, A.M.'s first assignment of error is overruled.

*A.M.'s Second Assignment of Error*

{¶39} A.M. argues that the trial court erred in concluding that he did not provide maintenance and support to D.C.H. without justifiable cause and that his consent was, therefore, not required for the adoption to proceed.

Legal Standard

{¶40} "Appellate courts are to 'decide each assignment of error' raised on appeal 'unless an assignment of error is made moot by a ruling on another assignment of error . . . .'" *Durfor v. West Mansfield Conservation Club*, 2022-Ohio-416, ¶ 39 (3d Dist.), quoting App.R. 12(A)(1)(c).  "An issue is moot when it

'involve[s] no actual genuine, live controversy, the decision of which can definitely affect existing legal relations.'" *Sullinger v. Reed*, 2021-Ohio-2872, ¶ 52 (3d Dist.), quoting *Culver v. City of Warren*, 84 Ohio App. 373, 393 (11th Dist. 1948), quoting Borchard, Declaratory Judgments, 35 (2d Ed. 1941). "Put differently, an assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court." *Sullinger* at ¶ 52, quoting *State v. Gideon*, 2020-Ohio-6961, ¶ 26.

Legal Analysis

{¶41} In its judgment entry, the trial court relied upon a payment history report from the Crawford County CSEA. This report indicated that A.M. had a child support obligation of $97.92 per month but paid an average of $1.65 a month in the year preceding the filing of adoption petition.[4] The trial court then found that A.M. had not provided maintenance and support to D.C.H. in the year preceding the adoption petition.

{¶42} While A.M. challenges this determination, we note that, pursuant to the language used in R.C. 3107.07(A), "a failure without justifiable cause to provide *either* more than de minimis contact with the minor *or* maintenance and support for the one-year time period is sufficient to obviate the need for a parent's consent." (Emphasis sic.) *K.C.*, 2014-Ohio-3985, at ¶ 21 (3d Dist.).

---

[4] On several months, his $1.65 payment appears to have been delayed, resulting in him paying $0.00 in one month and making two payments of $1.65 in the following month.

{¶43} After examining A.M.'s first assignment of error, we determined that the trial court did not err in concluding that he failed to engage in more than de minimis contact in the year preceding the adoption petition without justifiable cause. This conclusion alone provides a sufficient basis for the adoption to proceed without A.M.'s consent. Thus, we do not need to determine whether the trial court erred in concluding whether A.M. failed to provide maintenance and support to D.C.H. in the relevant timeframe to decide this appeal. Since the resolution of the first assignment of error renders the issues raised herein moot, we decline to address the arguments in the second assignment of error pursuant to App.R. 12(A)(1)(c).

*D.E.'s First Assignment of Error*

{¶44} D.E. argues that the trial court improperly placed the burden of proof on her during the best interest phase of the adoption proceeding.

Legal Standard

{¶45} If the trial court concludes that parental consent is not required, the adoption proceeding moves into the best interest phase. *Adoption of A.R.L.P.*, 2024-Ohio-3318, ¶ 37 (5th Dist.). R.C. 3107.161(B) addresses the best-interest phase and provides the following:

> (B) When a court makes a determination in a contested adoption concerning the best interest of a child, the court shall consider all relevant factors including, but not limited to, all of the following:
>
> (1) The least detrimental available alternative for safeguarding the child's growth and development;

(2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;

(3) The wishes of the child in any case in which the child's age and maturity makes this feasible;

(4) The duration of the separation of the child from a parent;

(5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;

(6) The likelihood of safe reunification with a parent within a reasonable period of time;

(7) The importance of providing permanency, stability, and continuity of relationships for the child;

(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(9) The child's adjustment to the child's current home, school, and community;

(10) The mental and physical health of all persons involved in the situation;

(11) Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of any criminal offense involving any act that resulted in a child being abused or neglected; whether the person, in a case in which a child has been adjudicated to be an abused or neglected child, has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether the person has been convicted of, pleaded guilty to, or accused of a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the

person's family or household; and whether the person has been convicted of, pleaded guilty to, or accused of any offense involving a victim who at the time of the commission of the offense was a member of the person's family or household and caused physical harm to the victim in the commission of the offense.

In conducting a best-interest analysis, "[a] probate court is not required to list each factor set out in R.C. 3107.161(B) but, in order for an order granting an adoption to be upheld, the record must reflect consideration of those factors by the trial court." *A.E.C.*, 2024-Ohio-5559, at ¶ 53 (3d Dist.). "While the probate court must consider each factor in its best-interest analysis, no single factor controls." *In re Adoption of J.G.S.*, 2023-Ohio-1155, ¶ 15 (1st Dist.).

{¶46} Further, the version of R.C. 3107.161(C)[5] that was effective at the time of this proceeding stated the following regarding the best-interest phase:

A person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish the child's current placement is not the least detrimental available alternative.

Thus, even though "[t]he least detrimental available alternative" factor in R.C. 3107.161(B)(1) "is only one of the 11 enumerated best interest factors listed in the statute," this "factor is given special status" as the person contesting the adoption is directed to making a showing related to this factor under former R.C. 3107.161(C).

---

[5] The language placing a burden on the person contesting the adoption was removed by an amendment to R.C. 3107.161(C) that became effective on March 20, 2025. Since the petition for adoption was granted on February 14, 2025, the analysis in our opinion will use the language from the former version of R.C. 3107.161 that was in effect during the entirety of the proceedings before the trial court.

*In re Adoption of E.G.C.*, 2023-Ohio-3563, ¶ 9 (12th Dist.). However, the "petitioner retains the overall burden of proving that adoption is in the best interest of the child." *Id. See also In re Adoption of H.T.*, 2018-Ohio-2806, ¶ 31 (3d Dist.).

### Standard of Review

{¶47} "Adoption matters are decided on a case-by-case basis through the exercise of the discretion granted a probate court to determine what is in the best interest of the child to be adopted." *In re Adoption of M.R.P.*, 2022-Ohio-1631, ¶ 20 (12th Dist.). For this reason, appellate courts will not reverse a trial court's best-interest determination or decision to grant an adoption unless the trial court abused its discretion. *A.E.C.*, 2024-Ohio-5559, at ¶ 51 (3d Dist.); *In re Adoption of T.M.Z.*, 2025-Ohio-5000, ¶ 34 (3d Dist.). More than an error of judgment, an abuse of discretion is present where a decision is arbitrary, unreasonable, or unconscionable. *In re Adoption of L.S.*, 2020-Ohio-224, ¶ 22 (3d Dist.).

### Legal Analysis

{¶48} On appeal, D.E. asserts that the trial court incorrectly assigned the burdens to the respective parties to this proceeding during the best-interest phase of the adoption hearing. At the hearing, the attorney for the petitioners stated that "the burden of proof would shift to both mother and father" for the best-interest phase of the proceeding. (Tr. 6). The trial court then indicated that it was going to proceed under the assumption that the natural parents had this burden.

**{¶49}** However, courts in Ohio have held that the overall burden of proof rests with the petitioners to establish that the adoption is in the best interest of the child.[6] *H.T.*, 2018-Ohio-2806, at ¶ 31 (3d Dist.). *See also J.G.S.*, 2023-Ohio-1155, at ¶ 14 (1st Dist.); *Matter of Adoption of B.M.H.M.*, 2025-Ohio-1677, ¶ 20 (2d Dist.); *Matter of Adoption of Z.B.*, 2024-Ohio-4644, ¶ 20 (10th Dist.); *M.R.P.*, 2022-Ohio-1631, at ¶ 19 (12th Dist.). Thus, the record indicates that the trial court evaluated the evidence presented at the hearing based on incorrect assumptions about the burden of proof.

**{¶50}** Since we will not substitute our evaluation of the evidence for that of the trial court, we reverse the best interest finding so that the trial court can reweigh the evidence that was presented at the adoption hearing in the light of a proper understanding of the burdens on the respective parties. *See In re Adoption of Dues*, 69 Ohio App.3d 498, 501 (2d Dist. 1990). By reexamining the evidence that was presented at the hearing, the trial court can then issue an order in which the best-interest determination is the result of a proper application of the burdens to the respective parties. Since the trial court erred by incorrectly assigning the burden of

---

[6] As noted previously, an amended version of R.C. 3107.161 became effective in March of 2025. The amendment to this code section inserted the following language into R.C. 3107.161(D): "[t]he petitioner has the burden of proving the best interest of the child by a preponderance of the evidence." This amendment essentially codified the case law that held the petitioners had the burden of proof in the best-interest phase. Since this proceeding concluded before the revisions to R.C. 3107.161 were effective, we will ultimately rely on the case law addressing this burden. However, we note that our prior decisions and R.C. 3107.161(D) both ultimately place the burden on the petitioners in the best-interest phase.

proof to the parents in the best-interest phase of this proceeding, D.E.'s first assignment of error is sustained.

*D.E.'s Second, D.E.'s Third, and A.M.'s Fourth Assignments of Error*

{¶51} D.E. and A.M. argue that the trial court erred in various ways while conducting the best interest-analysis and in deciding to grant the adoption.

Legal Standard

{¶52} We reincorporate the legal standard for mootness that was set forth under A.M.'s second assignment of error.

Legal Analysis

{¶53} The arguments raised in these three assignments of error challenge various conclusions that the trial court drew from the evidence that was presented during the best-interest phase of the adoption proceeding. However, in deciding D.E.'s first assignment of error, we concluded that the trial court approached this evidence with incorrect assumptions about the respective burdens of the parties. Thus, we directed the trial court to reexamine this evidence in light of the fact that the petitioners had the overall burden of persuasion in the best-interest phase.

{¶54} Since the trial court must reevaluate the evidence that served as the basis of its best-interest findings, the arguments that challenge these findings are of no consequence at this juncture. Since the resolution of D.E.'s first assignment of

error renders these arguments moot, we decline to address D.E.'s second, D.E.'s third, and A.M.'s fourth assignments of error pursuant to App.R. 12(A)(1)(c).

*Conclusion*

**{¶55}** Having found no prejudicial error in the particulars assigned and argued in A.M.'s first, A.M.'s second, and A.M.'s third assignments of error, the judgment of the Probate Division of the Crawford County Court of Common Pleas is affirmed as to the issues raised therein.

**{¶56}** Having found prejudicial error in the particulars assigned and argued in D.E.'s first assignment of error, the judgment of the Probate Division of the Crawford County Court of Common Pleas is reversed as to the issues raised therein.

**{¶57}** This cause of action is hereby remanded to the trial court.

*Judgment Affirmed in Part*
*Reversed in Part*
*And Cause Remanded*

**WALDICK, P.J. and MILLER, J., concur.**

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, it is the judgment and order of this Court that the judgment of the trial court is affirmed in part and reversed in part with costs assessed equally between Appellants and Appellees for which judgment is hereby rendered. The cause is hereby remanded to the trial court for further proceedings and for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

_____
John R. Willamowski, Judge

_____
Juergen A. Waldick, Judge

_____
Mark C. Miller, Judge

DATED:
/hls